**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | CASE NO: 3:06-CR-236-MEF |
| ) | |
| CHRISTOPHER LAJUAN HEARD ) | |

**SENTENCING MEMORANDUM**

**COMES NOW** the Defendant, **CHRISTOPHER LAJUAN HEARD,** by undersigned counsel, Donnie W. Bethel, and submits his Sentencing Memorandum in support of a sentence that recognizes that Mr. Heard possessed the gun named in the indictment solely for lawful sporting purposes.

**HISTORICAL BACKGROUND OF USSG §2K2.1(a)(4)(B)**

1. The so-called "Assault Weapons Ban" (hereinafter "Ban") was signed into law by President Clinton on September 13, 1994. The law had a ten-year sunset provision and expired on September 13, 2004.

2. Prior to the enactment of the Ban, The United States Sentencing Commission, *Guidelines Manual*, §2K2.1(a)(4)(B) (Nov. 1994), provided for an increase in the base offense level from 14 to 20 for a defendant who possessed a firearm described in 26 U.S.C. §5845(a). The firearms described therein include short-barreled shotguns, short-barreled rifles, machine guns, silencers and certain destructive devices, none of which are at issue in Mr. Heard's case.

3. After the enactment of the Ban, the Guidelines were revised so that USSG

§2K2.1(a)(4) also provided for an increase in the base offense level from 14 to 20 for a defendant who possessed a firearm described in 18 U.S.C. §921(a)(30), which was the Code section that described those firearms covered by the Ban. *See* USSG §2K2.1(a)(4)(B) (Nov. 1995). After the Ban expired in 2004, this language was removed from USSG §2K2.1(a)(4)(B), but not until November 2006. *See* USSG §2K2.1(a)(4)(B) (Nov. 2006). Of particular note is the fact that it took the members of the United States Sentencing Commission more than *two years* to get around to amending the Guidelines to reflect the expiration of the Ban.

    4.    Not content, however, to simply restore the language of USSG §2K2.1(a)(4)(B) to what was there prior to November of 1995, the members of the Commission instead added specific language to USSG §2K2.1(a)(4)(B). That Guidelines provision now provides that the base offense level increases from 14 to 20 for a defendant who was a prohibited person "if (i) the offense involved a *(I) semiautomatic firearm that is capable of accepting a large capacity magazine*; or (II) firearm described in 18 U.S.C.§5845(a) . . . ." The italicized language is the language that was added by the 2006 Amendments to the Guidelines, and which ensnares Mr. Heard. The intent of the members of the Commission in adding this language to USSG §2K2.1(a)(4)(B) is abundantly clear: they sought to continue the enhanced penalties for citizens who possess what were temporarily-banned but now-perfectly-legal sporting weapons, even though Congress purposefully allowed the Ban to expire.

**DISCUSSION**

5.      In light of the Supreme Court's opinion in *United States v. Booker*, the sentencing court's determination of the appropriate sentence is no longer confined to a determination of the appropriate offense level, criminal history, and availability of authorized downward departures. Rather, under the post-*Booker* discretionary sentencing regime, the advisory Guidelines range is only one factor among several that this Court is required to consider in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). It is the sentencing statute, not the Sentencing Commission, which now governs the sentencing process.

6.      The overriding principle and basic mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in 18 U.S.C. §3553(a)(2). In determining the sentence minimally sufficient to comply with the purposes of sentencing, the court must consider several factors, which include, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational and vocational training. 18 U.S.C. §3553(a)(1) and (2). Moreover, under 18 U.S.C. §3661, *"no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for

the purpose of imposing an appropriate sentence." (emphasis added). In fashioning an appropriate sentence for Mr. Heard, he suggests that the Court should take particular note of the historical background surrounding the current version of USSG §2K2.1(a)(4)(B).

7. Mr. Heard possessed a Ruger Mini-14 rifle, which is a sporting gun. "Ruger manufactures hundreds of rifles . . . for all sporting uses including plinking, target shooting, small game and big game hunting, varmint shooting, and collecting." Available at http://www.ruger.com/Firearms/FA-Type-RI.html. LaFayette Police Officer Jerome Bailey, the investigating officer in this case, interviewed William Dean. Mr. Dean provided a signed, written statement in which he affirmed to Officer Bailey that he purchased the rifle identified in the indictment for hunting, and that he later sold the gun to Mr. Heard.

8. For USSG §2K2.1(b)(2) to apply, Mr. Heard need not have been actively engaged in using the rifle for lawful sporting purposes at the time he was found in possession of the gun; all that is required is that he did not use the gun for any purpose other than a lawful sporting purpose. "Lawful sporting purposes" is not limited strictly to hunting, but can include target shooting; at least once court has concluded that "lawful sporting purposes" includes shooting at cans. *United States v. Bossinger*, 12 F.3d 28, 29 (3rd Cir. 1993). Likewise, there is no requirement that Mr. Heard must have been engaged in target shooting at a gun club or public shooting range; he could have engaged in such activity on private property. Mr. Heard will present testimony at his sentencing hearing that this is precisely how he used the rifle; that is, that he used the gun for recreational shooting on private

property.

9.     Mr. Heard must concede, however, that the plain language of USSG §2K2.1(b)(2) does preclude the application of that Guidelines provision to Mr. Heard because he is subject to §2K2.1(a)(4). However, but for that disqualifier, Mr. Heard contends that all of the facts and circumstances surrounding his possession of the Mini-14 suggest that he would otherwise qualify for the application of §2K2.1(b)(2). Therefore, under an advisory-Guidelines scheme, Mr. Heard contends that a fair consideration of all the circumstances surrounding his possession of the rifle warrant a sentence that is substantially below the advisory Guidelines range of 24 to 30 months.

Dated this 15th day of August, 2007.

Respectfully submitted,

s/ Donnie W. Bethel
DONNIE W. BETHEL
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:don_bethel@fd.org
IN Bar Code: 14773-49

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **V.** | ) | **CASE NO: 3:06-CR-236-MEF-SRW** |
| | ) | |
| **CHRISTOPHER LAJUAN HEARD** | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2007, I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to the following: Christopher A. Snyder, Assistant United States Attorney.

    Respectfully submitted,

    s/ Donnie W. Bethel
    DONNIE W. BETHEL
    Assistant Federal Defender
    201 Monroe Street, Suite 407
    Montgomery, Alabama 36104
    Phone: (334) 834-2099
    Fax: (334) 834-0353
    E-mail: don_bethel@fd.org
    IN Bar Code: 14773-49

6